UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| CLARENCE WALKER, | Case No:  C 09-2770 SBA |
| Petitioner, | 2255 MOT. – See CR 04-40106 SBA |
| vs. | **ORDER DENYING MOTION UNDER 28 U.S.C. § 2255** |
| UNITED STATES OF AMERICA, | |
| Respondent. | Dkt. 159, 165, 171 |

On June 6, 2006, a federal jury convicted Petitioner Clarence Walker of causing the failure to file currency transaction reports ("CTRs") in violation of the Bank Secrecy Act of 1970, 31 U.S.C. § 5324(a)(1), (d)(1), and of conspiracy to do the same in violation of 18 U.S.C. § 371.  On December 4, 2006, the Court sentenced Walker to a term of forty months in custody of the Bureau of Prisons, a three-year term of supervised release and a $30,000 fine.

The parties are presently before the Court on (1) Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("2255 Motion") and (2) Petitioner's Motion for Judgment on the Pleadings.  Dkt. 159, 165. Having read and considered the papers filed in connection with these matters, and being fully informed, the Court hereby DENIES both motions for the reasons set forth below.

I.      BACKGROUND

Walker was employed by the Internal Revenue Service (IRS) as a revenue agent in its Civil Fraud Group in San Jose, California.  The group focused on auditing taxpayers engaged in fraudulent activities.  Under federal law, if a financial institution receives or distributes in excess of $10,000.00 in U.S. currency from an individual or business, it is required to file a CTR with the federal government.  Form 8300 is required to be filed by an

individual or business when a sale occurs and the seller receives over $10,000 in cash from the buyer.  Walker's job for the IRS was to educate and monitor check-cashers, convenience stores, liquor stores and other businesses that cashed checks, to ensure that they complied with the requirement to file CTRs for all cash transactions over $10,000. Two of those stores were Neel's Market and Clyde's Liquors.  To perform this oversight, Walker was required to visit these businesses to educate them about CTR requirements and to monitor their subsequent compliance.  If a business was not complying, Walker had the authority to refer that business for civil or criminal investigation.

Beginning in 2000, the Government began undercover operation "Cyberstorm," which focused on the purchase and sale of counterfeit software by Worldwide Services (WWS), a business owned by Sheila Wu and others.  The investigation revealed that Walker was using his official position with the IRS to assist WWS in its unlawful scheme by instructing businesses which cashed WWS' checks not to file CTRs.  In total, Walker helped WWS cash over $400,000 in checks in exchange for a payment of $30,000.

On April 18, 2002, Operation Cyberstorm resulted in the issuance of an indictment and search warrants and the arrests of Wu and others.  After further investigation, Walker was indicted on June 24, 2004.  On September 10, 2004, the Government filed a four-count Superseding Indictment which charged Walker with: (1) conspiracy to cause the failure to file CTRs in violation of 18 U.S.C. § 371; (2) causing the failure to file CTRs in violation of 31 U.S.C. § 5324(a)(1), (d)(1); (3) structuring in violation of 31 U.S.C. § 5324(a)(3), (d)(1); and (4) bribery in violation of 18 U.S.C. § 201(b)(2)(B) and (C).  The matter was tried to a jury at which Walker was represented by attorney Deborah Levine (Levine).[1] Dkt. 118.  On June 16, 2006, the jury found Walker guilty on Counts One and Two.  The jury was unable to reach verdict on Counts Three and Four, resulting in the Court declaring a mistrial as to those claims.  Id.

---

[1] The other defendants reached plea agreements with the Government.

On November 28, 2006, Walker was sentenced by the Court to a term of forty months in custody, three years of supervised release, a $30,000 fine and a $200 special assessment. Dkt. 129. The Court subsequently entered Judgment against Walker on December 4, 2006, which Walker appealed to the Ninth Circuit Court of Appeals. Attorney George C. Boisseau (Boisseau) represented Walker on appeal. On June 23, 2008, the Ninth Circuit affirmed the judgment in an unpublished disposition. Dkt. 155.

On June 22, 2009, Walker filed the instant 2255 motion in which he alleges claims for ineffective assistance of both his trial and appellate counsel. Dkt. 159. On September 24, 2009, Walker filed a twenty-page memorandum, ostensibly in support of his 2255 motion. Dkt. 163. The Government has filed an opposition to the motion, and Walker has filed a Traverse. Dkt. 172, 173.[2]

## II.    LEGAL STANDARD

Title 28, United States Code, section 2255 permits federal prisoners to file motions to set aside or correct a sentence on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." Where the petitioner does not allege lack of jurisdiction or constitutional error, relief under section 2255 is inappropriate unless the alleged error resulted in a "complete miscarriage of justice or in a proceeding inconsistent with the rudimentary demands of fair procedure." Hamilton v. United States, 67 F.3d 761, 763-64 (9th Cir. 1995).

---

[2] Walker also filed a Motion for Judgment on the Pleadings based on the Government's alleged failure to oppose his 2255 motion. Dkt. 167. However, the Court subsequently granted the Government leave to file a response to the 2255 motion, which the Government filed on May 18, 2010. Dkt. 172. Based on these developments, Walker's Motion for Judgment on the Pleadings is denied as moot. The Court, however, grants Walker's unopposed request for an extension of time to file his Traverse, nunc pro tunc. Dkt. 171.

III.   **DISCUSSION**

    A.   INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

        1.   **Legal Standard**

There is a two-prong test applicable to claims for ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 688 (1984).  First, the defendant must show "that counsel's representation fell below an objective standard of reasonableness."  Id.; see also Hasan v. Galaza, 254 F.3d 1150, 1154 (9th Cir. 2001).  The defendant must overcome a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance which, under the circumstances, might be considered sound trial strategy.  United States v. Molina, 934 F.2d 1440, 1447 (9th Cir. 1991).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 468 U.S. at 687.

To satisfy the second prong, petitioner must establish that he was also prejudiced by counsel's substandard performance.  See Gonzalez v. Knowles, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing Strickland, 466 U.S. at 694).  Under Strickland, "[o]ne is prejudiced if there is a reasonable probability that but-for counsel's objectively unreasonable performance, the outcome of the proceeding would have been different."  Id.  Judicial scrutiny of counsel's performance is "highly deferential."  Strickland, 466 U.S. at 689. A claim for ineffective assistance of counsel fails if either one of the prongs is not satisfied. See id. at 697.

        2.   **Contentions**

The Bank Secrecy Act obligates financial institutions to report to the government currency transactions involving more than $10,000.  See 31 U.S.C. § 5313(a).  These reports are referred to as Currency Transaction Reports or CTRs.  "Financial institution" is defined to include a variety of entities, including "an issuer, redeemer, or cashier of travelers' checks, checks, money orders, or similar instruments[.]"  31 U.S.C. § 5312(a)(2)(K).  In his 2255 motion, Walker argues that neither Neel's Market nor Clyde's Liquors are financial institutions within the meaning of the Bank Secrecy Act, and that

1  Levine was ineffective for failing to make such an argument at trial.  This contention lacks

2  merit.

3      According to the sworn declaration of counsel submitted by the Government, Levine

4  did not dispute the Government's characterization of Neel's Market and Clyde's Liquors as

5  "financial institutions" for a number of reasons.  Gov. Ex. 1, Dkt. 170-1.  Levine personally

6  visited both stores and interviewed their owners, and confirmed that both provided check

7  cashing services and concluded that they qualified as financial institutions under 31 U.S.C.

8  § 5312(a)(2)(K).  Id. ¶ 5.  Counsel also learned from Walker that he performed Title 31

9  compliance checks on Neel's Market and Clyde's Liquors to ensure their compliance in

10  various areas, including the submission of CTRs, and that Walker had, in fact, instructed

11  their employees to ensure their compliance with reporting laws.  Id. ¶¶ 6-8.  Walker never

12  told Levine that the stores were not financial institutions; rather, he took the position that

13  the store owners knew their CTR obligations (because he allegedly trained them well) and

14  that any failure to do so was attributable to them, not to him.  Id. ¶ 11-13.  Based on this

15  information, which is unchallenged by Walker, the Court finds Levine's decision was

16  objectively reasonable.

17      Though Walker does not confront Levine's declaration directly, he argues that the

18  Government failed to address his contention that "this court lacked subject matter

19  jurisdiction or his challenge to the [G]overnment's legal authority to indict him under the

20  afore [sic] noted statute."  Traverse at 4.  Walker's arguments, however, are predicated on

21  his unsupported assertion that Neel's Market and Clyde's Liquors are not financial

22  institutions subject to the requirements of the Bank Secrecy Act.  Moreover, he offers no

23  evidence to challenge the Government's showing that Levine had a reasonable and good

24  faith basis for deciding not to dispute the Government's allegation that either store qualified

25  as financial institutions under the Act.  Walker also quibbles with some of the details of

26  Levine's declaration, though none of his assertions of error undermine the Government's

27  showing that Levine had a reasonable, good faith basis for her course of action.

28

1    But even if Walker were able to overcome the presumption that Levine acted with

2  the requisite level of professional competence, he has otherwise failed to show prejudice—

3  the second prong of the <u>Strickland</u> test.  The evidence at trial, which Walker does not

4  dispute in his motion, showed that, as a part of his official duties, he was responsible for

5  ensuring the compliance of Neel's Market and Clyde's Liquors' with their obligation to file

6  CTRs; that both provided check cashing services; and that Walker cashed checks at both

7  establishments.  Given the substantial evidence demonstrating that both stores were

8  financial institutions governed by the Bank Secrecy Act, the Court is not persuaded that the

9  outcome at trial would have been different had Levine challenged whether these stores

10  qualified as financial institutions.  Based on his deficient showing with respect to both

11  prongs of the <u>Strickland</u> test, the Court rejects Walker's claim for ineffective assistant of

12  trial counsel.

13    **B.    INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL**

14      **1.    Loss Calculation Under U.S.S.G. § 2B1.1**

15    At sentencing, the Presentence Report (PSR) proposed an adjusted offense level of

16  twenty-six, which included a fourteen level upward adjustment based on an amount of loss

17  exceeding $400,000, pursuant to U.S.S.G. § 2B1.1(b)(1)(H).  <u>See</u> PSR at 5, Dkt. 163-1.

18  Walker's trial counsel objected to the adjustment.  She argued that Walker was not

19  convicted of structuring (as alleged in Count Three), and therefore, the jury did not find that

20  he had cashed the checks listed in the Indictment relating to the structuring charge.[3]

21  Counsel thus argued that the evidence at trial did not establish Walker cashed each and

22  every check alleged in the Indictment which allegedly was necessary to justify the

23  adjustment.

24    In response to Walker's contentions, the Government argued that there was ample

25  evidence to support a finding that the loss attributable to Walker exceeded $400,000.  Dkt.

26  121 at 4-5.  The Government pointed out that the jury found Walker guilty of conspiracy,

27

28    [3] "Structuring" refers to the structuring of a transaction to avoid mandated reporting
of certain transactions under federal law.  <u>See</u> 31 U.S.C. § 5324(a)(3).

1  and that even excluding the checks he allegedly structured from the loss calculation, the

2  total amount of the checks Walker cashed or attempted to cash was over $400,000.  Id.

3  Also, the Government argued that the Court heard evidence that Walker cashed or

4  attempted to cash all of the checks charged in the Indictment.  RT at 19:25-21:20.  Thus,

5  the Government argued that a preponderance of the evidence established that the loss

6  amount was over $400,000 in checks, which, in turn, supported the PSR's conclusion that a

7  fourteen level enhancement was proper.  Id.  After considering the arguments of counsel,

8  the Court stated:  "I do, based upon the evidence that's presented during the course of this

9  trial, and given the standard that applie[s], I am prepared to make a finding that there is

10  sufficient evidence in the record to show that it was . . . at least $400,000."  11/28/06

11  Reporter's Transcript of Proceedings ("RT"), at 25:18-24, Dkt. 163-1.

12      Walker now contends that his appellate counsel was ineffective based on his failure

13  to challenge the fourteen level offense adjustment under U.S.S.G. § 1.2B.1.  The Strickland

14  standard applies to claims based on ineffective assistance of appellate counsel.  Smith v.

15  Robbins, 528 U.S. 259, 285 (2000).  In Smith, the Supreme Court explained that an

16  appellate attorney filing a merits brief "need not (and should not) raise every nonfrivolous

17  claim, but rather may select from among them in order to maximize the likelihood of

18  success on appeal."  Id. at 288.  Thus, to establish ineffectiveness of appellate counsel, the

19  petitioner must demonstrate that "a particular nonfrivolous issue was clearly stronger than

20  issues that counsel did present."  Id.; see Jones v. Barnes, 463 U.S. 745, 751 (1983); Pollard

21  v. White, 119 F.3d 1430, 1435 (9th Cir. 1997) (noting that a "hallmark of effective

22  appellate counsel" is to avoid "throwing in a kitchen sink full of arguments with the hope

23  that some argument will persuade the court.").

24      Here, the Court finds that appellate counsel did not act in an objectively

25  unreasonable manner in deciding not to challenge the offense level adjustment on appeal.

26  As an initial matter, Walker has made no showing that this particular issue was "clearly

27  stronger" than those that appellate counsel chose to present on appeal.  In addition, despite

28  Walker's assertions to the contrary, the Court, in applying U.S.S.G. § 2B1.1(b)(1)(H),  did

1  not rely on conduct related to the counts on which Walker was acquitted in calculating the

2  loss amount.  But even if the Court had relied on such evidence, no error would have

3  occurred.  Walker was convicted of conspiracy, which included Walker's attempts to cash

4  and the actual cashing of checks at Neel's Market and Clyde's Liquors, which, as the Court

5  recognized at sentencing, exceeded $400,000.  Thus, the mistrial on the structuring charge

6  did not require the Court to alter its loss calculation.  See United States v. Nivin, 952 F.2d

7  596, 597 (9th Cir. 1991) ("The cumulative loss produced by a common scheme or course of

8  conduct should be used in determining the offense level, regardless of the number of counts

9  of conviction.") (quoting U.S.S.G. § 2F1.1 comment 8), overruled in part on other grounds

10  by United States v. Scarano, 76 F.3d 1471, 1474-77 (9th Cir. 1996).  Thus, the Court finds

11  no merit to Walker's claim that appellate counsel was ineffective by failing to raise this

12  issue on appeal.

13  **2.  Offense Level Adjustment Under U.S.S.G. § 2S1.3(b)(1)(A)**

14  Consistent with the PSR's recommendations, the Court imposed a two-level

15  enhancement under U.S.S.G. § 2S1.3(b)(1)(A) based on his knowledge that the funds were

16  proceeds of unlawful activity.  PSR ¶ 19.  In her sentencing memorandum, Walker's trial

17  counsel argued that there was no evidence that Walker knew that WWS was engaged in

18  illegal activity.  Def.'s Sentencing Mem. at 9-10, Dkt. 122.  The Court, however,

19  summarily rejected this argument based on the arguments presented in the parties' papers.

20  RT at 29:20-22.

21  In his 2255 motion, Walker simply repeats the assertion made at sentencing that

22  there was no evidence that he knew WWS was engaged in illegal activity.  However, there

23  was substantial evidence presented during trial to establish Walker's knowledge.  The

24  record showed, inter alia, that Walker disguised the cash transactions involving WWS,

25  which he would not otherwise have needed to do if the sales were legal.  There also was

26  testimony from co-defendant Radu Tomescu that Walker frequently was at WWS's office,

27  and knew about the company's illegal activities.  Given the record presented at trial, it

28

1  would have been frivolous for appellate counsel to challenge the two level enhancement

2  imposed under U.S.S.G. § 2S1.3(b)(1)(A).

3          **3.      Offense Level Adjustment Under U.S.S.G. § 3B1.3 and Fine**

4          Consistent with the recommendations in the PSR, the Court imposed a two-level

5  upward adjustment under U.S.S.G. § 2S1.3(b)(2) for using a "special skill," i.e., his

6  position with the IRS, to commit the offense.  PSR ¶ 22.   In addition, the Court imposed a

7  $30,000 fine in its Judgment.  Walker's trial counsel did not interpose any objections to

8  either of these particular determinations.  Nonetheless, Walker now claims that his

9  appellate counsel was ineffective for not raising them on appeal.  Not so.  Since trial

10  counsel did not raise any objections to these issues, Walker's counsel cannot be faulted for

11  failing to raise defaulted claims on appeal.  See United States v. Flores, 172 F.3d 695, 701

12  (9th Cir. 1999) (holding that the court of appeal would not consider challenge to sentencing

13  enhancement where he failed to object to it before the district court); Shah v. United States,

14  878 F.3d 1156, 1162 (9th Cir. 1989) ("The failure to raise a meritless legal argument does

15  not constitute ineffective assistance of counsel.") (internal quotations marks omitted).

16          **C.      CERTIFICATE OF APPEALABILITY**

17          Under 28 U.S.C. § 2253(c)(1), an appeal from a final order in a section 2255

18  proceeding is not permitted unless a circuit justice or district judge issues a certificate of

19  appealability ("COA").  A COA may issue "only if the applicant has made a substantial

20  showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); see Slack v.

21  McDaniel, 529 U.S. 473, 483 (2000). "The petitioner must demonstrate that reasonable

22  jurists would find the district court's assessment of the constitutional claims debatable or

23  wrong."  Id. at 484.  To satisfy this standard, the petitioner "must demonstrate that the

24  issues are debatable among jurists of reason; that a court could resolve the issues in a

25  different manner; or that the questions are adequate to deserve encouragement to proceed

26  further."  Lambright v. Stewart, 220 F.3d 1022, 1024–25 (9th Cir. 2000) (alteration in

27  original) (internal quotation marks and brackets omitted).  In the absence of a COA, no

28  appeal of a section 2255 final order may be heard.  See 28 U.S.C. § 2253(c).  The Court has

reviewed the record of this case and finds that the issues are not debatable among jurists of reason. See Lambright, 220 F.3d at 1024-25.  Accordingly, no COA will be issued.

## IV.    CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT Walker's 2255 motion and motion for judgment on the pleadings are DENIED.  The Clerk shall close the file and terminate any pending matters, including but not limited to Docket 159, 165 and 171.

IT IS SO ORDERED.

Dated:  September 27, 2012

*Saundra B Armstrong*

SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA


CLARENCE WALKER,

          Plaintiff,

  v.

USA et al,

          Defendant.
_____/


                              Case Number: CV09-02770 SBA

                                  **CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 1, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.


Clarence Walker
2601 Nuestra Castillo Court
Apt. 2206
San Jose, CA 95127


Dated: October 1, 2012

                                  Richard W. Wieking, Clerk
                                  By: Lisa Clark, Deputy Clerk

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28